All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Be seated please. We have three argued cases this morning. The first of these is number 161330 Hage v. United States. Mr. Pollitt, is that how you pronounce it? May it please the court, my name is Mark Pollitt. I'm counsel for appellants herein. We're here today because the appellants are entitled to compensation awarded them by the U.S. Court of Federal Claims for a taking of irrigation water found in ditches. These waters are specifically different class of waters. There were three classes of water involved, which I'll mention in a moment, that were affected by the court's regulatory decision. The waters affected by the physical takings decision and the finding of that taking was not appealed by the United States and was not reversed. Counselor, is that claim based on footnote 13 of Hague 5, the Hague 5 opinion? Are you basing your argument on that footnote? Not at all, your honor. The court itself specifically in several places noted, for example, in Hague 5, that in Hague 4 it had found that there was a physical taking based on a practical physical ouster and having discussed the standards that applied to that. He reinforced that in Hague 5 and if it were ambiguous that he had found... You're calling it on Hague 4, now that was footnote 13. That's right. Judge Smith referred back to that to say, I already found that there had been a physical taking. When he did that in Hague 5, they restated... If there was any question as to whether... I just want to be clear that your claim of position relates back to footnote 13. It relates back to footnote 13. It also relates all the way back to the complaint itself because we alleged each one of these kinds of taking in the original complaint. As the trials progressed, there were multiple trials. These issues were refining... It's the same water, isn't it? I'm sorry, your... It's the same water that was alleged to be the subject of the regulatory taking and that you now claim is the subject of physical taking. Actually, your honor, no. There were three classes of water discussed by the... I have a problem with that because it seems to me that you consistently, up until this court, said that it was the same water that you were seeking to recover for on two different theories. You referred to it as alternative theories, et cetera, et cetera. What is the evidence that it's different water? I know you have a chart in your brief which suggests that it's different water, but I didn't see any basis for that suggestion. The court itself, your honor, distinguished three classes of water. Waters that were carried in ditches to the private lands, irrigation waters. Livestock watering rights, which were enclosed by the fences that had been at issue. Then there were waters that flowed to the hagelands but not through the ditches. The court discussed all of these and seems to have treated the waters that flow not through ditches as the primary target of the regulatory takings claim, and the waters that flowed through the ditches as a result of the physical ouster claim. In addition to... I don't see that that's the case or that there was a separate award for ditch water, if you will, and other water flow. What's the basis for suggesting that there was a separate judgment with respect to different items of water on two different theories? If that were the case, you might have an argument here, but I don't see that the record supports that notion. Your honor, the court calculated. This is not a lump sum judgment, although he obviously, Judge Smith, then added it all together in the final judgment. He specifically looked at the information provided him by the state water engineer and said, these waters flowed in ditches here, here, here, and here. Show us where there was two different components of the judgment, one based on water that was alleged to involve regulatory taking and one that was alleged to be a physical thing, because I don't see that. Your honor, I would refer the court to the In addition to that, your honor... Wait, wait, wait, wait, wait, wait. Where? Where do we find this? Page 208. I don't have the actual decision in front of me, but he also on page 451, fed claimed at 578, also identifies the specific waters that were at issue. Okay, so we're on 578, as he say... I don't have that decision in front of me at the moment, please. He lists various allotments here, but I don't see where he says that it's different water for the regulatory and physical takings theory. He uses Claire Mahanna's report to identify the specific... That report doesn't divide it between physical and regulatory takings, does it? No, but Judge Smith, I believe, when he did his calculations... But may I, your honor, the additional point on this, however, is... Where is your evidence that it's different water? I don't have the case in front of me, your honor, but we have cited to the pages that I believe demonstrate that. But, your honor, there's an additional point... Do you agree that if it's not different water that you lose? I would respectfully not agree that it was not different water, because the actions of the government in different places affected different water. I'm asking you to assume. Let me ask you to assume that you're wrong, that we find that it's the same water. You lose that. Your honor, I would disagree with that as Regardless of which waters they are aimed at are two different ways in which a taking could have occurred. By analogy, if the question, for example, is whether I'm entitled for damages to my car, it doesn't matter whether the court has found that my car was negligently damaged by the defendant or my car was intentionally damaged by the defendant, even though the same car... That's true, but if you had a court of appeals decision saying you can't recover for damages to the car, you can't very well later on say that the court of appeals ignored one of your theories and you should be able to relitigate it, can you? I'm not sure... Well, first of all, I would not agree with the characterization that the court found that there was no taking under the regulatory claim. It simply determined that because no attempt to obtain a permit had been made, which Judge Smith found was based on futility and the court disagreed, the court said the matter was not ripe for litigation. That is a different thing than saying that you would not be entitled to compensation under that. However, there was no exhaustion requirement for the physical takings claim out there, and so there nevertheless could be a takings judgment on it, even though it affected only the same water. And so the court, Your Honor, respectfully, this court did not find, as we read that opinion, that it was, in fact, not taken. It just simply said we can't... The trial court should not have tried to reach that question because it lacked jurisdiction because the case was not yet ripe for adjudication on that claim. The physical takings claim itself is different, and so it is quite possible for the court to reach that claim because there was no prerequisite to the court's jurisdiction in finding a separate taking, because different legal standards apply. There was no balancing act. The physical taking standard says that if it is a practical physical ouster or some other physical taking, the government's interest doesn't matter. There is no question about investment-backed expectations. There is no question about the importance of the government's policy in that if the water was physically taken. It was a per se taking, and the only question then becomes which water or what the amount of that taking is. If we go back to the... Physical taking is with respect to water rights that accompany the ditch right-of-ways, correct? Ditch right-of-ways and the forage rights. Well, it was not just that, Your Honor. There was a whole host of conduct that Judge Smith found. I'm trying to help you here because in Hague 5, the way I see it, the court found three distinct analysis of government takings, and you're trying to add a fourth. I'm not sure I follow, Your Honor. If you look at this court's decision, the ultimate holding in the last paragraph of the decision, the court says, to the extent the physical takings claim relies on the erection offenses at a certain date, we reverse because of the statute of limitations. To the extent that the physical takings claim relies on the erection offenses at a different date in time, we find that you have not shown that sufficient water did not escape for the livestock to have access to that water. But there was a third finding by Judge Smith out of the physical taking that was based on the physical ouster claim. This court's decision... You argued that to the panel, right, at the time of the oral argument. I was not the person who presented that oral argument, Your Honor. The H council argued that, right? I can't say that I recall that he did. I have not looked at the transcript of that argument. I'm not sure there is, in fact, a transcript of that argument. But when... No, in fact, Your Honor, I have to say that he couldn't have argued that because the decision had not yet been issued. The question came up when the court issued the it was reversing the physical taking claim only to the extent that... I think you're mistaken. You should look at the oral argument. In the oral argument, Hage's council argued specifically that there was a physical taking because they weren't allowed to maintain the ditches. Well, that, Your Honor, is true in the sense that the court, the threats, the intimidations and the harassment by the government are found as a factual matter by the trial court independent of the regulatory scheme because the ultimate prosecution in Mr. Hage that really capped off and summarized the whole course of conduct. By the way, Your Honor, it not only had to do with ditches. For example, there was a reference to the transcript where the government officials took livestock that were being walked down a road, removed them, pushed the cattle off the road into the field, took a photograph of the livestock and then claimed that there was trespass on the part of Hage. It wasn't just ditch maintenance that was at issue. But the final prosecution of Mr. Hage was when he went up to the White Sage Ditch and using hand tools and hand tools only, and I know the United States has argued without citations of the record, that heavy equipment was used but heavy equipment was not used. So that when the United States prosecuted him... You're well into your rebuttal time. I'm sorry, Your Honor? You are well into your rebuttal time. Yeah, I don't want to use that all up, Your Honor. But just on the thing was he did do something that even the United States admitted did not require a permit and yet he was prosecuted. And that's part of the physical ouster claim. Okay. Thank you. Ms. Peterson? May it please the Court, Elizabeth Ann Peterson, Court of the United States. In 2012, this... Is this the same water? Yes, Your Honor. I think if you want to refer to page five as to whether this water was included within the regulatory taking that this court vacated, at page 213, that court describes what it held was an ouster of the pages from their... I'm sorry, 213? Yes, this is 82 fed claims at 213. Oh, you're not talking about the prior decision by this court? No, but this court vacated the... Is it the same water? Yes, and this court held that the United States appealed each component of the taking for which compensation was awarded by the Court of Federal Claims. And because that's the case under the mandate rule, which governs this appeal, any issue encompassed within the judgment that was appealed is deemed incorporated in the mandate. And the mandate included no instruction to further consider any claim. That means further consideration of any claim is precluded under the mandate rule. So there really is no further need to argue what water was what. That water, even if page is correct, that there was a holding with respect to different waters, the entire judgment was this court's jurisdiction on appeal in 2012. Its mandate did not instruct the Court of Federal Claims to further consider any claim. Well, we don't know what exactly the mandate means in that respect. If there had been a separate component of the judgment attributable to the physical and not a regulatory taking with respect to the ditches, it seems to me they might have an argument that the mandate did not preclude that. Because it wasn't something that the government appealed. Both because there's no reasonable reading of the Court of Federal Claims decision that could lead to the conclusion that there was a separate component holding that there was a second taking of the same water in the ditches that is addressed as a regulatory taking at page 230. You're wrong about that. It may be that Judge Smith articulated an alternative physical taking theory. But if he articulated that theory with respect to the same water, then it would seem to be that it's covered by the mandate. But if a component of the judgment was an award for physical taking of different water, then the argument would be that you didn't bother to appeal that and argue it on appeal and that they still have a right to pursue it. Even if that is the law here, Your Honor, that is not the case here. At page 213 of the Court of Federal Claims decision at 82 Fed Claims, it specifically addresses the water in the ditches under the regulatory takings analysis. That is the only place it addresses and analyzes the claim for water in the ditches. So there is no separate component laid out. Suppose we disagree with you about that. Suppose we view Judge Smith as having made alternative holdings based on physical and regulatory takings. Then we would submit, Your Honor, that that second component was in front of this court in the 2012 appeal and is incorporated and deemed incorporated within the mandate, which did not instruct further consideration of that. This court carefully considered all of the Court of Federal Claims' findings and conclusions in its very carefully constructed decision in 2012. There is no reasonable application of the mandate rule that would allow a second appeal. That may be true, but your opponent is arguing that there is still an outstanding issue here with respect to the water pertaining to the ditches. I understand that, Your Honor, but under Engel, any issue that is within the scope of the judgment that was on appeal in 2012 is deemed incorporated in the mandate in 2012. But if you had a judgment that said a million dollars for A and a million dollars for B, and the government appealed the judgment but only argued that the award of a million dollars on theory A was wrong and didn't bother to address the other one, then you'd have a problem in saying that a mandate that sent it back or remanded it encompassed both theories when the second theory relating to different property wasn't argued on appeal, wouldn't you? Well, if that were a completely separate and collateral holding, potentially, yes, Your Honor, but that certainly isn't the case here. There is no separate collateral holding. There is nothing even remotely resembling such a thing in this decision. In this case, it's clear that every issue that is within the scope of the judgment here, which was for a taking of the Hague's water rights, both on the federal lands and running off the federal lands onto their private pastures, is within the scope of this judgment, and therefore is deemed incorporated in this court's mandate. I believe that's the only way to read the Engle decision as it applies here. What does footnote 13 in Hague 4 address a physical taking with respect to the ditch water? Well, footnote 13 merely explains that the Hague's contend that their physical ouster or that the actions of the United States resulted in a physical ouster that is tantamount to a physical taking. Well, the court says that this is a physical taking. It says it's a physical taking. Claim. And then later it says this court has already held in Hague 4 that the government actions which physically prevented plaintiffs from accessing their 1866 Act ditches amounted to physical taking. I understand that, Your Honor. Isn't that a distinctive or separate finding of a physical taking? No, Your Honor. Within the structure of that decision. Why would we consider that that's rolled up into the mandate? That is within the mandate because it's within the scope of the judgment. But I don't see where the court addresses that at a later time. It does not. It looks like it just leaves it on the table. It leaves it on the table, Your Honor, because it is addressed only in the standard of review portion of the decision that outlines the standards for what constitutes a physical taking and what constitutes a regulatory taking. The court then goes on to analyze each claim under the appropriate standard. And it analyzes the claim that waters in irrigation ditches were taken under the regulatory taking standard. And that's what that page 213. But not under the physical taking standard. Correct, Your Honor. It never does that. It never holds that the water was taken. And the only reference it makes to its purported earlier holding is both to a footnote that does not purport to be a holding and is incorporated in a decision that expressly says it is not a holding. Suppose we reject that. Suppose we say that Judge Smith rendered a decision on two alternative grounds, one on a physical taking and one on a regulatory taking, and that the government only argued about the regulatory taking theory on the first appeal. What is the consequence of that? Is it still covered by the mandate? Yes, Your Honor. I believe under Yvie Escondido, City of Escondido, which is cited in our brief at page 35, those two alternative ways of looking at the same conduct to take the same property cannot be regarded as two separate holdings. So it seems to me that even if there are two separate ways, alternative theories for... But there's not two separate holdings here. There's only one. And your opponent's arguing that what's missing here is a final decision on the physical taking of the property rights with respect to the Ditches Act, 1866 Act Ditches. Your Honor, there is no reasonable interpretation, I believe, of the Court of Federal Claims' opinion that could assess that opinion to have held that the water in the ditches was taken by physical occupancy. It instead analyzes the water in the ditches and the so-called intimidation threats, limitation to hand tools, the various limitations on what the cages could do to maintain their ditches under a regulatory takings analysis. And I might add that even if this court could reach the merits of that question, it is without merit. Under that same case, Ye Against the City of Escondido, the Supreme Court made clear that without a physical occupation of the property, either by the government or mandated by the government by others, there is no physical taking. It's a regulatory taking. So the court was correct to that extent. It applied the correct analysis by analyzing the claimed taking of water in the irrigation ditches under the regulatory taking standard. The physical taking standard could not have applied to the so-called physical occupation. Why didn't the court rule that? That's not what the court said, though. Excuse me? That's not what the court said. The court said, we've already held in Hague 4 that the government actions would physically prevent a plaintiff from accessing their 86-act ditches amounted to a physical taking. Yes, it did say that, Your Honor. It said that under standard of review. And as we explained in our brief, the best understanding of that is that it's a loose use of the word held because it references a footnote that does not purport to be a holding in a decision that expressly says it does not address takings but addresses only property ownership, what the Hague's interests in the property were. So there is no reasonable interpretation of the Court of Federal Claims' final judgment. But if you're wrong about that, it's still the same claim, isn't it, even if they're two alternative theories, and that the resolution of the claim, even though our court might have failed to address one of the theories, is still a resolution of the claim. That is correct, Your Honor. And that is why the mandate rule is the final answer to this appeal. This appeal is precluded because that claim was within the scope of the judgment that this court addressed carefully in its 2012 opinion and vacated. So further adjudication of that claim is precluded under the mandate rule. If there are no further questions, we submit that the dismissal of the complaint here should be affirmed. Thank you.  The government's contention, first of all, that it was in the scope of the judgment, the judgment, of course, being simply stated that there had been taking of water. The Court of Claims pointed to two different courtrooms. It's going to be easier to put it this way. When the court said, I have already found, it didn't actually stop just there. It went on and essentially restated that conclusion and then said, I will now turn my attention to issues that I have not already addressed. That's when the court gets into the redictory takings claim. But it doesn't stop there. It then goes on to contrast the physical ouster takings claims and the conduct of the United States that gave rise to that decision of the court and contrasted that with the decisions it was making with respect to the regulatory claims. For example, in the physical takings claims, it basically says these were based on actions not based on public purpose or regulatory purpose, but out of hostility toward the ages. He points to the prosecution. He points to the harassment and the hostility that he showed by references to the transcript. Then when he talks about the regulatory takings claim, now under the regulatory takings claim, it involved the proliferation of willows and other things upstream from the ditches. That's a reason why it's different. The water carrying the ditches is not the water that was upstream that the ages sought to clean and clear that area so that stuff could get down there. He characterizes those as legitimate regulatory goal not based on hostility toward the ages. So he distinguishes. This is a separate taking. I think we're out of time. Okay. Thank you, Your Honor. Thank you. Thank both counsel. The case is submitted.